STATE OF NORTH CAROLINA v. DONNIE RAY ANDERSON, RONNIE ANDERSON, BARRY DEAN BARKER, ATHA LOUISE BATES, LARRY BOYD CROUSE, WILLIAM A. CODY DURHAM, JAMES C. RHODES, EDWARD SMOOT, WARREN GRADY WOOD, RANDY KEITH BYRD, RANDALL S. SMOOT

No. 8112SC1141

(Filed 15 June 1982)

1. **Narcotics § 1.3— possession and manufacture of excess of 50 pounds of marijuana—two separate felonies of trafficking**

   Under G.S. 90-95(h) if a person engages in conduct which constitutes possession of in excess of 50 pounds of marijuana as well as conduct which constitutes manufacture of in excess of 50 pounds of marijuana, that person may be charged with and convicted of two separate felonies of trafficking in marijuana. Therefore, the trial court erred in finding that indictments charging defendants with possession *and* manufacture of 2,000 pounds or more but less than 10,000 pounds of marijuana in violation of G.S. 90-95(h)(1)c. and conspiracy to possess *and* manufacture 2,000 pounds or more but less than 10,000 pounds of marijuana in violation of G.S. 90-95(i) created only two felonies known as "Trafficking In Marijuana" and "Conspiracy To Traffic In Marijuana."

2. **Constitutional Law § 30— State's destruction of evidence—no violation of rights of discovery, confrontation or due process**

   In a prosecution concerning the possession and manufacture of over 2,000 pounds of marijuana, the State's destruction of the marijuana except for three to four pounds of random samples did not violate defendants' discovery rights under G.S. 15A-903(e) or their rights of confrontation under Art. I, § 23 of the Constitution of North Carolina. Nor did the State's destruction of the marijuana deny defendants a fair and reasonable opportunity to investigate, prepare and present their defense in violation of their constitutional right to due process where the marijuana was destroyed in good faith because of the lack of storage facilities; the random samples were available for testing by defendants; photographs showing the field of marijuana, the stacks of cut marijuana, and the marijuana loaded on a truck were delivered to defendants; and defendants failed to show that the weight of the marijuana, though a necessary element of the crimes, was a critical issue.

APPEAL by the State from *Brannon, Judge.* Orders entered 26 May 1982 in Superior Court, HOKE County. Heard in the Court of Appeals 26 April 1982.

Each of the defendants was charged in separate indictments containing similar counts as follows: First, possession of 2,000 pounds or more but less than 10,000 pounds of marijuana, in violation of G.S. 90-95(h)(1)c.; second, manufacture of 2,000 pounds or more but less than 10,000 pounds of marijuana in violation of G.S.

90-95(h)(1)c.; third, conspiracy with the others to possess 2,000 pounds or more but less than 10,000 pounds of marijuana in violation of G.S. 90-95(i); fourth, conspiracy with the others to manufacture 2,000 pounds or more but less than 10,000 pounds of marijuana in violation of G.S. 90-95(i).

Defendants made a motion to compel election, a motion to quash the indictments and a motion to dismiss. The State and defendants agreed that evidentiary matters would be resolved by a Bill of Particulars provided by the State. The defendants filed a motion for a Bill of Particulars and the State responded.

By Order No. 1 dated 26 May 1982, the trial court quashed and dismissed the first and third counts in each indictment. The order recited that G.S. 90-95(h)(1) creates only a single felony, known as "Trafficking In Marijuana," which may be accomplished by selling, delivering, transporting, manufacturing or possessing more than fifty pounds; that G.S. 90-95(i) created a single felony known as "Conspiracy To Traffic In Marijuana," which is accomplished by engaging in a conspiracy to accomplish one or more of the acts of selling, manufacturing, delivering, transporting or possessing in excess of fifty pounds of marijuana; that the first and second counts constituted a duplication of a single offense; that the third and fourth counts constituted a duplication of a single offense; that thereupon the State elected to proceed on the second count "Trafficking In Marijuana by manufacture" and the fourth count "Conspiracy To Traffic In Marijuana by manufacture."

By Order No. 2 dated 26 May 1982 the trial court dismissed the second and fourth counts. The court found that law officers on 13 September 1980 discovered marijuana plants in a field, cut and stacked the plants on a flat bed truck, found the marijuana to weigh 2,200 pounds; that on 14 September 1980 law officers pulled up other plants from the field, which they estimated to weigh about 500 pounds; that three or four pounds of random samples were taken from the plants cut from the field for S.B.I. analysis; that photographs were made; and that thereafter by order of the Sheriff of Hoke County the plants were destroyed by fire because of lack of storage facilities.

The court concluded that defendants were denied the right to examine and test the plants as provided by G.S. 15A-903(e), and

that defendants were denied their constitutional rights of confrontation and due process.

The State appealed. The defendants made cross assignments of error.

In this opinion the green vegetable matter discovered in the field will be referred to as marijuana, as determined by Laboratory Report of the State Bureau of Investigation upon testing the random samples, for the purpose of brevity only.

*Attorney General Edmisten by Assistant Attorney General Christopher P. Brewer for the State.*

*Paul W. Freeman, Jr., for defendant appellees Barry Dean Barker, Edward Smoot, and Warren Grady Wood; William C. Gray, Jr., for defendant appellees Donnie Ray Anderson, Ronnie Anderson, Larry Boyd Crouse, James C. Rhodes, Randy Keith Byrd and Randell S. Smoot.*

CLARK, Judge.

This appeal raises two questions: First, did the trial court err in Order No. 1 by its interpretation of G.S. 90-95(h)(1), holding that both *possession* and *manufacture* were a single crime; and second, did the trial court err in Order No. 2 by dismissing the charges against the defendants on the grounds that the destruction of most of the seized marijuana plants by law officers violated statutory and constitutional rights of the defendants?

### I. The Interpretation of G.S. 90-95(h)(1).

[1] Each of the defendants was charged with four crimes: (1) possession and (2) manufacture of marijuana in violation of G.S. 90-95(h)(1), and (3) conspiracy to possess marijuana and (4) conspiracy to manufacture marijuana in violation of G.S. 90-95(i).

These statutes read as follows:

"(h) Notwithstanding any other provisions of law, the following provisions apply except as otherwise provided in this Article.

(1) Any person who sells, manufactures, delivers, transports, or possesses in excess of 50 pounds (avoir-

dupois) of marijuana shall be guilty of a felony which felony shall be known as 'trafficking in marijuana' and if the quantity of such substance . . . . "

"(i) The penalties provided in subsection (h) of this section shall also apply to any person who is convicted of conspiracy to commit any of the offenses described in subsection (h) of this section."

There are many rules of statutory construction. *See* 12 Strong's N.C. Index 3d *Statutes* §§ 5-7 (1978). The most conspicuous rule is that the intent of the legislature controls the interpretation of a statute. *In re Banks*, 295 N.C. 236, 244 S.E. 2d 386 (1978); *State v. Hart*, 287 N.C. 76, 213 S.E. 2d 291 (1975). Other sections of G.S. 90-95 have been interpreted by the Supreme Court and the Court of Appeals of North Carolina. All of G.S. 90-95 deals with the same subject matter, violations of the Controlled Substances Act and penalties for these violations. Some of the other sections of the statute contain some of the same words in describing unlawful acts as does G.S. 90-95(h)(1). All parts of the same statute dealing with the same subject are to be construed together as a whole. *Duke Power Co. v. Clayton, Comr. of Revenue*, 274 N.C. 505, 164 S.E. 2d 289 (1968); *In re Hickerson*, 235 N.C. 716, 71 S.E. 2d 129 (1952). Among other *indicia* considered by the courts in determining legislative intent are previous interpretations of the same or similar statutes. *Wainwright v. Stone*, 414 U.S. 21, 38 L.Ed. 2d 179, 94 S.Ct. 190 (1973); *In re Banks, supra.*

G.S. 90-95(h) and (i), on which the subject indictments are based, are a part of Chapter 1251 of the 1979 Session Laws, entitled "An Act To Control Trafficking In Certain Controlled Substances."

Prior to the enactment of Chapter 1251 of the 1979 Session Laws, the majority of the substantive offenses involving illegal drug activities were set forth in G.S. 90-88 before passage of a 1973 amendment, and thereafter in G.S. 90-95(a)(1), (2) and (3), which made it unlawful for any person to manufacture, sell, or deliver, possess or possess with intent to manufacture, sell or deliver, a controlled substance. These same statutory sections are now a part of the new G.S. 90-95 with the 1979 amendments [subsections (h) and (i)] which provide for comprehensive gradua-

tions in the scale of mandatory sentences and fines for the sale, manufacture, delivery, transportation or possession of substantial amounts of certain illicit drugs.

It is clear that the 1979 amendments to G.S. 90-95 by the addition of subsections (h) and (i) are responsive to a growing concern regarding the gravity of illegal drug activity in North Carolina and the need for effective laws to deter the corrupting influence of drug dealers and traffickers. Prior to the enactment of the 1979 amendment, the provisions of G.S. 90-88 before 1973 and thereafter G.S. 90-95(a)(1), (2), and (3), have been interpreted by the courts of North Carolina. The distinct acts denounced by the statute (manufacture, sell, deliver, possess) have been held to constitute separate and distinct offenses. *State v. Aiken,* 286 N.C. 202, 209 S.E. 2d 763 (1974); *State v. Thornton,* 283 N.C. 513, 196 S.E. 2d 701 (1973); *State v. Cameron,* 283 N.C. 191, 195 S.E. 2d 481 (1973); *State v. Salem,* 50 N.C. App. 419, 274 S.E. 2d 501, *disc. rev. denied,* 302 N.C. 401, 279 S.E. 2d 355 (1981); *State v. Brown,* 20 N.C. App. 71, 200 S.E. 2d 666, *cert. denied,* 284 N.C. 617, 202 S.E. 2d 274 (1973). The same statutory interpretation has been made in other jurisdictions. 28 C.J.S. *Drugs and Narcotics Supplement* § 171 (1974).

The cases cited and others not cited, which have established the rule of law that it was the intent of the legislature in enacting previous and current statutes similar to the statute in question to create separate and distinct crimes for the various acts denounced, must be given substantial weight in interpreting the similar statute [G.S. 90-95(h) and (i)] on which the indictments are based.

We find the words "guilty of a felony . . . known as 'trafficking in marijuana'" relates primarily to the preceding words "50 pounds (avoirdupois) of marijuana," and the use of the word felony in singular form refers to the singular crime known as "trafficking in marijuana," a crime consisting of any one or more of the denounced acts, any one of which is a separate crime. We hold that under G.S. 90-95(h) if a person engages in conduct which constitutes possession of in excess of 50 pounds of marijuana as well as conduct which constitutes manufacture of in excess of 50 pounds of marijuana, then the person may be charged with and convicted of two separate felonies of trafficking in marijuana.

Order No. 1 quashing and vacating the first and third counts of the indictments is reversed.

## II. Destruction of Marijuana Plants

[2]  The circumstances relating to the destruction of the marijuana appear in the State's answer to the defendants' motion for Bill of Particulars, as follows: On 13 September 1980 Hoke County law officers discovered a field of approximately three to five acres containing growing marijuana and three stacks of marijuana recently cut above ground level. Photographs of the marijuana were taken. Random samples weighing about three to four pounds were taken from the cut stacks and the growing marijuana. The marijuana was immediately hauled away and weighed. The weight was about 2,200 pounds. On the following day the growing marijuana remaining in the field was harvested and estimated by the law officers to weigh 500 pounds. All the marijuana was taken by truck to the sally port of the Hoke County jail, where it was photographed. On 15 September 1980 law officers burned the marijuana, except the samples which were available to defendants for inspection. It was burned on the order of the Sheriff due to lack of storage facilities.

Five photographs showing the three stacks of cut marijuana, the field of marijuana, and the marijuana loaded on the truck, were delivered to defendants. The defendants offered no evidence or other material in support of their motions.

In Order No. 2 the court found as a fact that the Sheriff ordered the green vegetable matter destroyed because of lack of storage facilities, and that it was not destroyed with the intention to deprive the defendants of an opportunity to inspect or test the plants. It is obvious that 2,700 pounds of marijuana plants are quite bulky. Storage pending final disposition of the cases would require a substantial storage area. It appears that the Sheriff had no adequate storage facility under his control. There would be many problems involved in the preservation and security of the plants if a commercial storage facility were used. This finding of fact is supported by the Bill of Particulars. The defendants' cross assignments of error excepting to the finding are without merit.

In determining whether the trial court erred in dismissing the second and fourth counts, we must consider whether the circumstances of the destruction in light of the crimes charged deprived the defendants of constitutional rights to due process or statutory rights to discovery.

Weight is one of the essential elements of the crimes charged. The indictment alleges that the weight of the marijuana exceeded 2,000 pounds in violation of G.S. 90-95(h)(1)c. The weight element upon a charge of trafficking in marijuana becomes more critical if the State's evidence of the weight approaches the minimum weight charged. In the case *sub judice* it appears that the State's evidence tends to show that the weight of the marijuana plants was 700 pounds more than the 2,000 pounds charged under G.S. 90-95(h)(1)c. The only part of the marijuana plant which does not qualify as "marijuana" is "the mature stalks of such plant, . . . " G.S. 90-87(16). The defendants having offered no evidence in support of their motions, the record on appeal does not disclose whether defendants contend that the stalks were mature and, if so, whether the weight of the mature stalks could possibly reduce the total weight of the "marijuana" below 2,000 pounds. The burden would be upon the defendants to show that the stalks were mature or that any other part of the matter or material seized did not qualify as "marijuana," as defined by G.S. 90-87(16). *See State v. Childers,* 41 N.C. App. 729, 255 S.E. 2d 654, *disc. rev. denied,* 298 N.C. 302, 259 S.E. 2d 916 (1979).

The defendants contend that they cannot meet the burden of showing that some of the material seized and weighed was not "marijuana" and the weight of such disqualified material because of the destruction of the marijuana. The validity of this contention must be considered in light of the information submitted by the State in its Bill of Particulars, such as the retention of random samples of the marijuana stalks weighing three to four pounds, photographs taken 13 September 1980, showing the stacks of cut marijuana in the field and the open field of marijuana behind the stacks, and photographs taken 15 September 1980 showing the truckload of marijuana at the county jail. The random samples of marijuana are available to the defendants for inspection and testing. Also furnished or available to defendants is a copy of the Laboratory Report of the State Bureau of Investigation.

Defendants' claim of deprivation of rights is based entirely on the destruction of the marijuana, except for the random samples, as reported in the Bill of Particulars. Defendants have offered arguments but no evidentiary matter in support of their motions. It does not appear from the record on appeal that they have inspected or tested the random samples available to them for the purpose of determining if the samples are marijuana, or for the purpose of determining if the stalks are or were mature and their size and weight, or if there were other extraneous matter which did not qualify as "marijuana." The questions asked in defendants' motions for Bill of Particulars were fully answered by the State. There is nothing to indicate that defendants could not by discovery or independent investigation obtain other information which is relevant on the issue of weight.

There has been no violation of defendants' discovery rights under G.S. 15A-903(e), which provides in pertinent part as follows:

"In addition, upon motion of a defendant, the court must order the prosecutor to permit the defendant to inspect, examine, and test, subject to appropriate safeguards, *any physical evidence, or a sample of it, available to the prosecutor if the State intends to offer the evidence, or tests or experiments made in connection with the evidence, as an exhibit or evidence in the case.*" (Emphasis added.)

The State has made available to the defendants samples of the physical evidence in question. The only physical evidence available to the prosecutor is random samples. The statute does not require the preservation of all physical evidence. Most of the physical evidence originally seized was destroyed by law officers in good faith because of lack of storage facilities.

Nor has the destruction deprived the defendants of the opportunity to test independently the random samples of physical evidence to determine if it is marijuana, or to determine if a part of the gross weight of the matter is mature stalks or other extraneous matter which would not qualify as marijuana.

There has been no violation of defendants' rights of confrontation under Article I, Section 23 of the Constitution of the State of North Carolina, which provides:

"In all criminal prosecutions, every person charged with crime has the right to be informed of the accusation and to confront the accusers and witnesses with other testimony, . . ."

This provision of the State Constitution has been interpreted by numerous cases to guarantee to defendants in criminal trials the right to confront the witnesses against them and to confront the accusers with other testimony. *State v. Thomas*, 294 N.C. 105, 240 S.E. 2d 426 (1978); *State v. Smathers*, 287 N.C. 226, 214 S.E. 2d 112 (1975); *State v. Watson*, 281 N.C. 221, 188 S.E. 2d 289, *cert. denied*, 409 U.S. 1043 (1972).

The defendants next argue the infringement of their due process rights under either the State or Federal Constitutions. First, the finding by the trial court that the law officers acted in good faith in destroying the bulk of the marijuana is fully supported by the evidence. The finding of good faith, however, does not end the inquiry. There still remains the question of whether such destruction denied to the defendants a fair and reasonable opportunity to investigate, prepare and present their defense in violation of their constitutional right to due process. *United States v. Agurs*, 427 U.S. 97, 49 L.Ed. 2d 342, 96 S. Ct. 2392 (1976); *United States v. Bryant*, 448 F. 2d 1182 (D.C. Cir. 1971).

We have found no North Carolina cases directly on point. Cases in which all physical evidence was destroyed by the prosecution are not applicable because in the case before us random samples have been preserved. Federal cases which support the principle that the destruction of the bulk of the marijuana seized, but with the preservation of a random sample, does not violate due process are: *United States v. Benedict*, 647 F. 2d 928 (9th Cir.), *cert. denied*, --- U.S. ---, 102 S. Ct. 648 (1981); *United States v. Young*, 535 F. 2d 484 (9th Cir.), *cert. denied*, 429 U.S. 999 (1976); and *United States v. Heiden*, 508 F. 2d 898 (9th Cir. 1974).

We do not impose a hard and fast rule governing the destruction of physical evidence by the State. Whether the destruction infringes upon the rights of an accused depends upon the circumstances in each case. In this case we consider particularly significant the destruction of the bulk of the marijuana in good faith and for a practical reason, the preservation of random samples, the photographs of the physical evidence, and the failure

on the part of the defendants to show that the weight of the mari-juana, though a necessary element, was a critical issue.

Order No. 1 and Order No. 2 are not supported by the evidence and the law. Defendants' cross-assignments of error are overruled. The orders appealed from are

Reversed.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.