777 F.2d 902
 Virgil Mayo SANDERSON, Sr., Appellant,
v.
Nathan RICE; Rufus Edmisten, Attorney General of N.C.,
Appellees (Three Cases).
Virgil Mayo SANDERSON, Sr., Appellee,
v.
Nathan A. RICE, Rufus L. Edmisten, Attorney General, Appellants.
 Nos. 84-6557(L), 84-6575, 84-6730 and 84-6731.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 9, 1985.
Decided Nov. 15, 1985.
 
 Richard N. League, Sp. Deputy Atty. Gen. (Lacy H. Thornburg, Atty. Gen., Dept. of Justice, Raleigh, N.C., on brief), for Nathan A. Rice and Rufus L. Edmisten.
 Robert P. Mosteller, Professor, Duke Law School, Washington, D.C. (Mark O. Costley, Marshall D. Orson, William W. Horton, L. Campbell Tucker, third year law students on brief), for Virgil Mayo Sanderson, Sr.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 MURNAGHAN, Circuit Judge:
 
 
 1
 The result of several interrelated petitions for a writ of habeas corpus filed by Virgil Mayo Sanderson in the United States District Court for the Eastern District of North Carolina fails fully to satisfy either him or the State of North Carolina. A holding of double jeopardy with respect to two counts on which Sanderson had been convicted, one for trafficking in marijuana by possession and the other for trafficking in marijuana by manufacture, has been appealed by the State.[1] Sanderson has appealed from the denial of all other relief sought by him.
 
 
 2
 Sanderson, along with two members of his family, during May, June and July of 1981, was involved in a series of drug transactions in Duplin County, North Carolina. On May 20, 1981, he sold a half ounce of cocaine and two ounces of marijuana. On May 22, 1981, he sold approximately a gram of cocaine, and on June 5, 1981 sold about a half a gram of cocaine. On June 18, 1981, Sanderson sold an amount in excess of an ounce of cocaine. Then, to cap everything off, on July 24, 1981, authorities discovered a substantial crop of marijuana (over 2,000 pounds) growing on farm land owned by Sanderson or his family.
 
 
 3
 The July 24, 1981 discovery brought about arrest and indictment for: 1) trafficking in marijuana by possession; 2) trafficking in marijuana by manufacture; 3) conspiracy to traffic by possession; 4) conspiracy to traffic by manufacture; 5) a substantive charge of possession of marijuana; and 6) a substantive charge of manufacturing marijuana. Conviction on October 5, 1981 of all six charges led to seven-year consecutive sentences on the first four counts. Concurrent sentences were also imposed for the two substantive charges of possession and manufacture.[2]
 
 
 4
 On noting an appeal from the October 5, 1981 conviction, Sanderson encountered further difficulties following his moving to post an appeal bond. The State then contemporaneously indicted and thereafter convicted Sanderson for offenses on May 20, May 22, June 5, and June 18, 1981. As a consequence, there followed convictions resulting in sentencing of Sanderson to an additional thirty years, additional three to ten year sentences, and other sentencing running concurrently. As a consequence, the total sentence aggregated 78 years.
 
 Double Jeopardy
 
 5
 At the center of the State's appeal lies the essential necessity of ascertaining, in a federal proceeding, the controlling state law rule. Does North Carolina make criminal two behaviors, one of trafficking by possession of marijuana, the other of trafficking by manufacture of marijuana; or are possession and manufacture, by North Carolina law, but two manifestations of a unitary trafficking behavior? The Supreme Court has placed the state legislative definition of the crime at the heart of double jeopardy analysis. The existence of double jeopardy depends on the legislative objective, whether to create one crime or more than one. Missouri v. Hunter, 459 U.S. 359, 365-68, 103 S.Ct. 673, 677-79, 74 L.Ed.2d 535 (1983). There is no separate federal constitutional standard requiring that certain actions be defined as single or as multiple crimes. If a statute provides for multiple crimes, the argument that the legislature constitutionally should have treated the course of conduct as constituting only one offense, entailing only a single punishment, will not avail. Albernaz v. United States, 450 U.S. 333, 340, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981); Whalen v. United States, 445 U.S. 684, 688-89, 100 S.Ct. 1432, 1435-36, 63 L.Ed.2d 715 (1980). As the Supreme Court has pointed out, the Double Jeopardy Clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. at 366, 103 S.Ct. at 678.
 
 
 6
 It follows that Sanderson's double jeopardy claim can stand only if the North Carolina statute under which he was convicted was intended by the state legislature to create but a single offense.
 
 
 7
 Before we even reach that question, however, there is the preliminary question of whether we can--and should--avoid entirely the necessity of examining whether the North Carolina Court of Appeals, in concluding that there were two trafficking offenses, decided the state rule of law correctly or incorrectly, for the reason that the court's decision rested on an adequate and independent state ground. A federal court in a habeas corpus proceeding should be cautious in setting aside the judgment of a state court where that judgment is based on an interpretation of state law. Where the state law determination is adequate to sustain the state court's decision, the constitutional issue need not be reached. In such a situation, a federal court should review a state court's decision of a state law issue only where there is reason to suspect that federal rights are being improperly obstructed. Wainwright v. Sykes, 433 U.S. 72, 81, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977); Mullaney v. Wilbur, 421 U.S. 684, 690-91 & n. 11, 95 S.Ct. 1881, 1885-86 & n. 11, 44 L.Ed.2d 508 (1975); Henry v. Mississippi, 379 U.S. 443, 446-47, 85 S.Ct. 564, 566-67, 13 L.Ed.2d 408 (1965).
 
 
 8
 In this case, the North Carolina Court of Appeals rejected Sanderson's double jeopardy claim on the ground that his conduct constituted multiple offenses under North Carolina law. The North Carolina court's resolution of the threshold issue constitutes an independent state ground; thus, it may be argued, no constitutional issue arises. It is "a well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts." Wainwright v. Sykes, supra, 433 U.S. at 81, 97 S.Ct. at 2503. Because there is no reason to suspect that the North Carolina Court of Appeals improperly sought to defeat a federal right, we, it may be convincingly argued, must accept that court's decision on a question of state law. See Thomas v. Warden, 683 F.2d 83, 85 (4th Cir.1982) ("Where the [double jeopardy] claim is made in relation to state offenses, federal courts are essentially bound by state court interpretations of state legislative intent."). Whichever of the two possible constructions of North Carolina law is correct, it appears that perhaps no constitutional error meriting habeas corpus relief has been made out here. See Hall v. Wainwright, 493 F.2d 37 (5th Cir.1974).[3]
 
 
 9
 However, it is not necessary to rest decision on the grounds that no constitutional issue is presented, but rather at most an erroneous error of state law has been committed, inasmuch as an inquiry into North Carolina law leaves us convinced that the North Carolina Court of Appeals reached the correct result in all events.[4] Such an inquiry is appropriate bearing in mind that only the highest court of the state can determine in a binding fashion the rule of state law. E.g., Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) ("the State's highest court is the best authority on its own law."). An opinion of an intermediate appellate court is persuasive in situations where the highest state court has not spoken[5] but does not prevail where the federal court is convinced that the highest court of the state would rule to the contrary. See Brendle v. General Tire & Rubber Co., 505 F.2d 243, 245 (4th Cir.1974) ("A federal court, sitting in North Carolina in a diversity case, must apply the law as announced by the highest court of that state or, if the law is unclear, as it appears the highest court of that state would rule.").
 
 
 10
 The indictment lodged against Sanderson included counts (a) for trafficking in marijuana by possession and (b) for trafficking in marijuana by manufacture. One permissible reading would interpret the statute, N.C.Gen.Stat. 90-95(h), as creating two separate and distinct offenses, permitting conviction and sentencing for both without violation of the constitutional stricture against double jeopardy. Another possible reading, also entirely constitutional, however, would construe the statute as creating but one crime, "trafficking," with trafficking by possession and trafficking by manufacture but two variations of a single offense. It may be argued, therefore, that a conviction and sentencing under both counts in the indictment not only would constitute a misinterpretation of state law, ordinarily not a basis for grant of habeas corpus relief,[6] but also would subject the petitioner, specifically Sanderson here, to double jeopardy in violation of the Fifth Amendment to the Federal Constitution through the Fourteenth Amendment.[7]
 
 
 11
 Here the determination of how the highest court of North Carolina, the North Carolina Supreme Court, would interpret the statute presents an intriguing puzzle. On direct appeal the intermediate appellate court decided that two distinct crimes were proscribed. State v. Sanderson, 60 N.C.App. 604, 612-14, 300 S.E.2d 9, 15-16, dis. review denied, 308 N.C. 679, 304 S.E.2d 759 (1983). However, it did so only because of an extant decision of another panel of the intermediate appellate court to which it felt bound to accord the binding effect of the doctrine of stare decisis. State v. Donnie Ray Anderson, 57 N.C.App. 602, 292 S.E.2d 163, dis. review denied, 306 N.C. 559, 294 S.E.2d 372 (1982).[8]
 
 
 12
 The rationale advanced by the Donnie Ray Anderson panel of the North Carolina Court of Appeals was as follows:
 
 
 13
 It is clear that the 1979 amendments to G.S. 90-95 by the addition of subsections (h) and (i) are responsive to a growing concern regarding the gravity of illegal drug activity in North Carolina and the need for effective laws to deter the corrupting influence of drug dealers and traffickers. Prior to the enactment of the 1979 amendment, the provisions of G.S. 90-88 before 1973 and thereafter G.S. 90-95(a)(1), (2), and (3), have been interpreted by the courts of North Carolina. The distinct acts denounced by the statute (manufacture, sell, deliver, possess) have been held to constitute separate and distinct offenses. State v. Aiken, 286 N.C. 202, 209 S.E.2d 763 (1974); State v. Thornton, 283 N.C. 513, 196 S.E.2d 701 (1973); State v. Cameron, 283 N.C. 191, 195 S.E.2d 481 (1973); State v. Salem, 50 N.C.App. 419, 274 S.E.2d 501, disc. rev. denied, 302 N.C. 401, 279 S.E.2d 355 (1981); State v. Brown, 20 N.C.App. 71, 200 S.E.2d 666, cert. denied, 284 N.C. 617, 202 S.E.2d 274 (1973).
 
 
 14
 57 N.C.App. at 606, 292 S.E.2d at 165-66.
 
 
 15
 Making an election between the two starkly contrasting decisions, by different panels of the North Carolina Court of Appeals, is not easy. On the one hand, the court in Sanderson advanced very telling arguments in support of the contention that the statute proscribes but a single crime. On the other hand, in Donnie Ray Anderson, the historical perspective, as described, suggests a convincing reason why the North Carolina legislative approach in a number of analogous circumstances, the consequence having been to create separate and distinct crimes, should be deemed applicable to N.C.Gen.Stat. 90-95(h).[9]
 
 
 16
 We fully recognize that, for purposes of announcing definitive statements of North Carolina law, the Supreme Court of North Carolina does not consider an earlier denial of discretionary review to "constitute approval of the reasoning upon which the Court of Appeals reached its decision." Builders Supplies Co. of Goldsboro, North Carolina, Inc. v. Gainey, 282 N.C. 261, 266, 192 S.E.2d 449, 453 (1972); accord Peaseley v. Virginia Iron, Coal and Coke Co., 282 N.C. 585, 592-94, 194 S.E.2d 133, 139-40 (1973); Northern National Life Ins. Co. v. Lacy J. Miller Machine Co., Inc., 311 N.C. 62, 76, 316 S.E.2d 256, 265 (1984).
 
 
 17
 However, that is not the posture in which the question here arises. While our objective is to ascertain what the North Carolina Supreme Court would decide, free of any persuasive effect of the denials of discretionary review in Donnie Ray Anderson and Sanderson insofar as the merits are concerned, we cannot ignore the very relevant consideration that the North Carolina Supreme Court, presented with the diametrically opposed views expressed in Donnie Ray Anderson, on the one hand, and Sanderson, on the other, and further presented with the stark reality that, if the results in those court of appeals cases were wrong, Sanderson would improperly serve a total sentence of 28 years instead of an aggregate 14 years, nevertheless, did nothing to bring Sanderson up for review. In those circumstances, and given that, insofar as holdings are concerned, all extant North Carolina authority applies a rule that separate and distinct crimes were charged and proven, we feel bound to give effect to those holdings. It must be borne in mind that the North Carolina Supreme Court's interest in preserving its right to adjudicate on a clean slate is not completely congruent with our purpose of ascertaining, absent an expression of the North Carolina Supreme Court, what the current best indication of North Carolina law is. In that posture, realistically, we are influenced by the not irrelevant consideration that six[10] judges, well informed on the North Carolina law, have seen the matter one way, while only three judges of equal dignity have seen it the other.
 
 
 18
 A factor which may contribute to our reaching the decision we have is a concern that, under applicable North Carolina statutes, an appeal beyond the court of appeals to the North Carolina Supreme Court is but discretionary, not a matter of right. In essence, we are reluctant to conclude, as petitioner here in effect urges, that, whenever there are conflicting court of appeals decisions, and the North Carolina Supreme Court has denied discretionary review, and thus has not spoken to the issue, the habeas corpus petitioner must, in effect, be accorded a further review in federal courts not substantively different from another appeal in the state judicial system. In that appeal, essentially, we would sit as the North Carolina Supreme Court, granting a review which the North Carolina Supreme Court, itself, has explicitly denied to the petitioner, a role which, for numerous obvious reasons, we are loath to assume.
 
 
 19
 Accordingly, we reverse the grant of the writ of habeas corpus issued to limit sentencing to a single offense of trafficking in marijuana.[11]
 
 Multiple Conspiracies
 
 20
 With respect to the multiple conspiracies whose separate existences were predicated by the prosecution on the fact that different crimes, e.g., conspiracy to traffic in marijuana by possession, in one instance, conspiracy to traffic in marijuana by manufacture, in another,[12] we observe that North Carolina does not contest the applicability of the legal doctrine that the number of agreements, not the number of substantive crimes nor the number of overt acts, dictates the number of conspiracies. E.g., State v. Gibson, 233 N.C. 691, 65 S.E.2d 508 (1951); State v. Rozier, 69 N.C.App. 38, 52, 316 S.E.2d 893, 902 (1984).[13] Viewed in that light only one plot or plan, scheme or conspiracy, covering both possessing marijuana and manufacturing marijuana was involved. The writ of habeas corpus shall issue voiding the seven year sentence applying to one of the conspiracy counts.[14]
 
 Vindictiveness
 
 21
 Sanderson also asserts that vindictiveness was evident in the State's subsequent prosecution of the cases relating to transactions prior in time to the July 24, 1981 discovery of the marijuana crop only after convictions for the July 24, 1981 events had been obtained. While there may be something amounting to a suspicious aroma of vindictiveness, nevertheless, there was a question of fact to be determined as to whether vindictiveness prompted the filing of the second case or only timing was involved in the institution of the case at the time it was filed. North Carolina insists that the subsequent prosecution was going to occur in all events, and only the question of when was affected by the grant of bond in the secured amount of $75,000 to Sanderson pending appeal from the initial conviction. It is undisputed that filing of the subsequent prosecution was accelerated in order to prevent Sanderson's release. However, the State succeeded in producing sufficient evidence to permit a finding that the second prosecution would have been brought in due course in all events, being held up only because of an ongoing undercover investigation which would have been compromised by premature disclosure of its existence. Such a finding has been made by the state court and is not to be disregarded unless failing in support in a manner not present here. 28 U.S.C. Sec. 2254(d); Sumner v. Mata, 449 U.S. 539, 545, 101 S.Ct. 764, 768, 66 L.Ed.2d 722 (1981). Consequently, Sanderson's claim of vindictiveness as a ground for awarding of the habeas corpus writ must fail.
 
 Ineffective Assistance of Counsel
 
 22
 Finally, Sanderson has asserted misconduct by his lawyer amounting to ineffective assistance of counsel and prosecutorial misconduct. The district court, without holding an evidentiary hearing, denied relief to Sanderson on those grounds. However, Sanderson's petition alleged that his father, his son (as co-defendants), and he were represented by only two attorneys. Allegedly one of the attorneys representing them announced to the jury that Sanderson was the guilty one of the three defendants. Despite the district court's conclusion that perusal of the record discloses that counsel's representation was within the range of competence expected of criminal law practitioners, we cannot accept that such would be the case if the allegation asserting that Sanderson had been thrown to the wolves were established to be true. The allegation was not so "palpably incredible" that an evidentiary hearing was unnecessary. Cf. Machibroda v. United States, 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962). Closing arguments in Sanderson's trial had not been recorded, so perusal of the record would not definitively disclose whether the allegation was or was not true. An evidentiary hearing is consequently necessary.
 
 
 23
 We know, of course, that ineffective assistance of counsel will normally suffice for relief only upon a showing of actual prejudice. Strickland v. Washington, 466 U.S. 668, ----, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). However, where conflict of interest served adversely to affect the adequacy of representation, a showing of prejudice in order to obtain relief is not requisite. Cuyler v. Sullivan, 446 U.S. 335, 349-50, 100 S.Ct. 1708, 1718-19, 64 L.Ed.2d 333 (1980). The case should be remanded for a hearing to determine whether there are factual underpinnings to support Sanderson's allegations of conflict of interest and ineffective assistance. Also, in that connection, proper attention should be given to the question of whether the statements of Sanderson's counsel to the jury were justifiable as reasonable trial tactics.Prosecutorial Misconduct
 
 
 24
 By the same token, in light of the remand on the ineffective assistance grounds, we also direct remand to determine whether, in fact, the prosecution did refer to Sanderson's failure to testify or outlined his prior convictions which were not in the record and, if so, whether there was a blatant violation of the rule laid down in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) mandating a grant of the writ.
 
 
 25
 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED IN PART FOR ACTION IN ACCORDANCE WITH THE FOREGOING OPINION.
 
 
 
 [1]
 The parties agree that the rationale requiring vacation on double jeopardy grounds of one of the trafficking convictions, if sound, also would apply to compel vacation of one of the two conspiracy to traffic counts. One such count deals with conspiracy to traffic by possessing, the other with conspiracy to traffic by manufacturing. However, for independent reasons of North Carolina law compelling vacation of the conviction under one of the conspiracy counts, it is not incumbent on us to determine whether double jeopardy exists by reason of the two conspiracy convictions. We agree, all the same, that the question relating to trafficking an to conspiracy to traffic appears to be identical
 
 
 [2]
 In state court proceedings, State v. Sanderson, 60 N.C.App. 604, 300 S.E.2d 9, dis. review denied, 308 N.C. 679, 304 S.E.2d 759 (1983), the sentences for the two substantive charges of possession and of manufacture were struck on the grounds that they sought to punish lesser included offenses incorporated in the trafficking charges
 
 
 [3]
 In Hall v. Wainwright, 493 F.2d 37 (5th Cir.1974), the Fifth Circuit considered a state intermediate appellate court's determination that there were two crimes and a denial of certiorari by the state's highest court, followed by a grant of a writ of habeas corpus by the United States district court on the grounds that a proper reading of state law required a determination that only a single crime had been committed. The Fifth Circuit reversed, holding that no matter of constitutional magnitude was involved, so habeas corpus should not issue to correct what at most was an erroneous interpretation and application of state law. Under 28 U.S.C. Sec. 2254(a) a habeas corpus application may be entertained only for a "violation of the Constitution or laws or treaties of the United States."
 
 
 [4]
 Influencing our decision to pursue the alternate route, rather than to rely on the rationale of Hall v. Wainwright, is the consideration that the parties and the district court concerned themselves solely with ascertainment of what the correct North Carolina rule was. To the district court and to the able counsel who has represented Sanderson in exemplary fashion, it would be less than fair simply to rest decision on a point that the State of North Carolina never chose to assert. See, e.g., United States v. One 1971 Mercedes Benz, 542 F.2d 912, 915 (4th Cir.1976)
 
 
 [5]
 Gooding v. Wilson, 405 U.S. 518, 525-26 n. 3, 92 S.Ct. 1103, 1107-08 n. 3, 31 L.Ed.2d 408 (1972); Fidelity Union Trust Co. v. Field, 311 U.S. 169, 176-77, 61 S.Ct. 176, 177-78, 85 L.Ed. 109 (1940); West v. American Telephone and Telegraph Co., 311 U.S. 223, 237-38, 61 S.Ct. 179, 183-84, 85 L.Ed. 139 (1940). However, the Courts in those cases were not faced with the complication we must deal with of what were in effect conflicting decisions by different panels of the intermediate appellate court
 
 
 [6]
 See note 3, supra
 
 
 [7]
 See Missouri v. Hunter, supra, 459 U.S. at 365-68, 103 S.Ct. at 677-79 (1983) ("The Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."). If, under the statute, but one crime is committed, it is no answer that the state or federal legislature constitutionally could have broken up the offense into several distinct component parts and provided for punishment of several crimes. See Whalen v. United States, 445 U.S. 684, 688-89, 100 S.Ct. 1432, 1435-36, 63 L.Ed.2d 715 (1980)
 
 
 [8]
 The Sanderson panel of the North Carolina Court of Appeals displayed, however, substantial disenchantment with the result it felt compelled to reach:
 Although the doctrine of stare decisis leads us to follow the Anderson decision, for the following reasons we would reach a different result if we were addressing this question for the first time. In seeking to discover the legislative intent for interpretation of a statute, the court should consider the language of the statute, the spirit of the act, and what the act seeks to accomplish. Stevenson v. City of Durham, 281 N.C. 300, 188 S.E.2d 281 (1972). It is an accepted rule of statutory construction that words of a statute will ordinarily be given their natural, approved, and recognized meaning. Victory Cab Co. v. City of Charlotte, 234 N.C. 572, 68 S.E.2d 433 (1951). The words "shall be guilty of a felony which felony shall be known as 'trafficking in marijuana' " seems to mean if a person does the forbidden act(s), he shall be guilty of one felony: trafficking in marijuana. Otherwise, the statute should read: "Any person who sells, manufactures, delivers, transports, or possesses in excess of 50 pounds shall be guilty of trafficking in marijuana." If the legislature intended G.S. 90-95(h)(1) to be interpreted in the same way as G.S. 90-95(a), they could easily have followed the language of G.S. 90-95(a): "It is unlawful for any person to sell, manufacture, deliver, transport or possess a controlled substance in excess of 50 pounds." Or, they could have simply increased the penalties provided in G.S. 90-95(b) for violations with large quantities of marijuana, and not included section (h) at all. Since they chose language which indicates that the offenses constitute one felony, logically the statute seems to refer to only one felony. Any other result implies the words "shall be guilty of a felony which felony shall be known as 'trafficking in marijuana' " are mere surplusage. We believe the legislative intent was to create one felony. In Anderson the Court said: "We find the words 'guilty of a felony ... known as "trafficking in marijuana" ' relates primarily to the preceding words '50 pounds (avoirdupois) of marijuana.' " Of course, the felony cannot be "50 pounds of marijuana," rather, the felony is the sale, manufacture, delivery, transport, or possession of the fifty pounds of marijuana. The Anderson panel continued: "and the use of the word felony in singular form refers to the singular crime known as 'trafficking in marijuana,' a crime consisting of any one or more of the denounced acts...." We agree with this statement that the singular crime of trafficking consists of one or more of the acts enumerated in the statute. We question however the Anderson panel's conclusion: "any one of which is a separate crime." If trafficking is a singular crime which may consist of any one or more of the denounced acts, we have difficulty seeing how each denounced act can be a separate crime. We have already examined the language of the statute and stated our opinion that the intent was to create one felony, which may consist of one or more of the enumerated acts. The spirit of the act, and what the act seeks to accomplish seem to be clear: its intent is to deter drug dealers. The offense of trafficking is limited to fifty pounds or more, with increasing penalties for larger amounts. G.S. 90-95(h)(1)(a), (b), (c), and (d). A person who has fifty pounds of marijuana is probably a dealer. It is unlikely that such a large quantity would be for personal use. Moreover, the statute would be redundant if it did not refer to only one felony because a dealer who sold fifty pounds of marijuana would probably commit all the enumerated offenses. Prior to sale, however, the dealer would possess, manufacture, and probably transport the marijuana, but if the purpose of the act is to punish dealers, it would make sense for the punishment to be the same whether the dealer was caught before or after he made a sale. As previously stated, however, we will follow the decision in Anderson.
 
 
 [60]
 N.C.App. at 612-14, 300 S.E.2d at 15-16 (emphasis in original)
 
 
 [9]
 In the subsequent case of State v. Baize, 71 N.C.App. 521, 527, 323 S.E.2d 36, 40 (1984), dis. review denied, 313 N.C. 174, 326 S.E.2d 34 (1985), still another panel of the North Carolina Court of Appeals followed Donnie Ray Anderson stating:
 Although we are aware of Chief Judge Vaughn's expressions of concern in Sanderson about the Anderson Court's broad statutory interpretation of G.S. Sec. 90-95(h)(3) (Supp.1983), we follow these holdings. These two assignments of error are therefore overruled.
 That decision amounts to respectable additional support for the "two crimes" interpretation of the North Carolina statute. The holding rests not simply, as in Sanderson, on stare decisis but rather indicates satisfaction that Donnie Ray Anderson correctly interpreted the North Carolina law as it would be ascertained by the North Carolina Supreme Court.
 
 
 [10]
 We might, indeed, say eight judges, in light of State v. Jevan Anderson, 76 N.C.App. 434, ---, 333 S.E.2d 762, 764 (1985). There involved was a factual situation in which it, remarkably, was in the State's interest to have the trafficking statute construed to create but a single crime. However, applying Donnie Ray Anderson, a panel of North Carolina Appeals Court judges, two of whom had not participated in Donnie Ray Anderson, Sanderson, or Baize, ruled: "Further each of the denounced acts in the trafficking statute constitutes a separate offense.... There is no single offense of trafficking which may be proved by evidence of the commission of any one of multiple acts."
 
 
 [11]
 For like reasons we do not pause to consider the question as to the procedural propriety of the presence before us of the contention of double jeopardy made respecting two charges growing out of the same set of events, one for trafficking in cocaine by possession, the other trafficking in cocaine by sale. The foregoing determination concerning the charges of trafficking in marijuana by possession and by manufacture applies to foreclose the contention on the merits for the legal question is identical
 
 
 [12]
 There also were charges relating to May 20, 1981 for possession of marijuana with intent to sell and deliver, sale and delivery of marijuana, possession of cocaine with intent to sell and deliver and sale and delivery of cocaine, along with four matching conspiracy charges to cover each of those alleged substantive crimes
 
 
 [13]
 In its Brief, the State forthrightly acknowledges:
 In Petitioner's cases, because there was no evidence at all of a separate agreement for each individual offense committed pursuant to the conspiracy, the evidence would also be insufficient under the Constitution, Jackson v. Virginia, 447 US 307 [99 S.Ct. 2781, 61 L.Ed.2d 560] (1979) and this would provide a basis for relief to Petitioner if no other defense appeared.
 
 
 [14]
 Similarly, of the four conspiracies to commit substantive offenses of possession and sale of marijuana and cocaine, only one may survive and a writ of habeas corpus shall issue voiding all save one of those conspiracy convictions