STATE OF NORTH CAROLINA v. STEVE THOMAS SIMMONS

No. 8317SC574

(Filed 7 February 1984)

1. **Searches and Seizures § 3— "open field doctrine"—no Fourth Amendment protection**

    In a prosecution for trafficking in marijuana, the trial court correctly denied defendant's motion to suppress evidence of marijuana found in the warrantless search of leased farmland since the protections of the Fourth Amendment are not applicable to open fields.

2. **Searches and Seizures § 14— voluntariness of signature on consent to search form**

    There was no error in the denial of defendant's motion to suppress marijuana uncovered as the result of the search of his home where, although conflicting, there was competent evidence supporting the court's conclusion that "the defendant freely and voluntarily consented to the search."

3. **Narcotics § 4— sufficiency of evidence of total weight of marijuana**

    In a prosecution for trafficking in marijuana by possession of marijuana in excess of 10,000 pounds and with trafficking in marijuana by manufacturing

marijuana in excess of 10,000 pounds, the State introduced sufficient evidence on the essential element of weight to permit the case to go to the jury where the evidence revealed that officials harvested eight truckloads of the material alleged to be marijuana and "plowed under" another "pickup load or so"; the eight loads weighed by officials of the License, Theft, and Weight Section of the North Carolina Division of Motor Vehicles were found to weigh 16,620 pounds; one load contained plants that had been pulled up by the roots, while the remaining loads contained plants that had been mown or hand picked; some of the plants were damp because of rain that interrupted the harvesting process; photographs and random samples were taken of the materials seized prior to its destruction; and the State's evidence showed that the destruction was performed in good faith and for a practical reason.

**4. Narcotics § 3.3— opinion testimony concerning weight of marijuana—properly admitted**

The trial court properly admitted testimony by a police officer that marijuana he observed in an upstairs room of defendant's residence weighed "approximately 200 pounds," where the testimony was based on personal observation and defendant had ample opportunity to challenge the witness's testimony on cross-examination, and defendant was free to argue the question of its proper weight to the jury.

**5. Narcotics § 3.3— opinion testimony concerning maturity of marijuana plants— failure to strike—no error**

There was no error in the court's denial of a motion to strike testimony of a witness who was properly qualified as an expert in the identification of controlled substances where the witness was permitted to testify that marijuana stalks he examined were not, in his opinion, mature and where the witness stated on cross-examination that his expertise did not extend to "the growing of marijuana." Because the State had offered substantial evidence on the point, the motion to strike was overbroad, and the court's action proper.

Judge EAGLES dissenting.

APPEAL by defendant from *Washington, Judge.* Judgment entered 13 January 1983 in Superior Court, STOKES County. Heard in the Court of Appeals 10 January 1984.

Defendant was charged in proper bills of indictment with trafficking in marijuana by possession of marijuana in excess of 10,000 pounds and with trafficking in marijuana by manufacturing marijuana in excess of 10,000 pounds. He was found guilty as charged and from a judgment on the verdict imposing a prison sentence of thirty-five years he appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Francis W. Crawley, for the State.*

*White and Crumpler, by Fred G. Crumpler, Jr. and Randolph M. James, for defendant, appellant.*

HEDRICK, Judge.

Defendant assigns as error the trial court's denial of his motion to suppress evidence of marijuana seized from a cornfield and from his home. After a hearing on defendant's motion, the court made findings and conclusions which are summarized as follows:

On 14 July 1982 employees of Duke Power Company were inspecting power lines and power line poles along a power line right of way located on land leased by defendant. While performing his duties one of the employees observed what appeared to be marijuana growing in a cornfield on the land. He broke off part of one plant and took the material to the Pilot Mountain Police Department, where he told an officer what he had seen and where he had seen it. The Stokes County Sheriff's Department was informed of the discovery, and officers from that Department examined the material and believed it to be marijuana. The officers then went to the scene, where they met the defendant as they approached the cornfield. The officers told defendant that they had received a report of marijuana and were going to look for it, whereupon the defendant agreed and led the officers through the cornfield. The officers examined the area along the power line right of way, and discovered what appeared to be marijuana growing in the cornfield. Defendant was then advised of his constitutional rights, and he and the officers returned to the house in which defendant lived alone.

Upon arriving at the house defendant and the officers first sat in an unmarked patrol car, at which time defendant was again advised of his constitutional rights. At this time defendant signed a written waiver of his constitutional rights and consented to a search of his home. Although defendant contends that this consent was coerced, the evidence showed that the "threats" complained of were statements by the officers that they would obtain a search warrant if defendant withheld consent to a search of the house.

Based on the foregoing findings, the court concluded that the searches of the farm property and defendant's residence were reasonable and proper. The court found that defendant "did not have a legitimate or reasonable expectation of privacy in so far as the marijuana patch located in the cornfield is concerned; and the defendant's consent to the search of the residence occupied by him was freely and voluntarily given by him, understanding his position and his status at that time."

[1] Defendant first contends that the court erred in denying his motion to suppress "the fruits of a warrantless search of the leased farmland." Defendant argues that the warrantless search of the cornfield violated his Fourth Amendment right to be free from unreasonable search and seizure.

In *Hester v. United States,* 265 U.S. 57 (1924), the United States Supreme Court held that "the special protection accorded by the 4th Amendment to the people in their 'persons, houses, papers, and effects' is not extended to the open fields. The distinction between the latter and the house is as old as the common law." *Id.* at 59. That *Hester* has continued vitality is demonstrated by its application in a recent Sixth Circuit opinion to facts similar to those of the instant case: "[W]e conclude that under *Hester* and *Katz* any expectation of privacy that an owner might have with respect to his open field is not, *as a matter of law,* an expectation that society is prepared to recognize as reasonable. . . . We believe that no privacy rights inhere and the Fourth Amendment does not protect an open field of marijuana." *United States v. Oliver,* 686 F. 2d 356, 360 (1982). Our Supreme Court followed the "open fields doctrine" established in *Hester* in *State v. Spencer,* 281 N.C. 121, 187 S.E. 2d 779 (1972), and in *State v. Boone,* 293 N.C. 702, 709, 239 S.E. 2d 459, 463 (1977): "Generally, an open field is not an area entitled to Fourth Amendment protection."

The evidence in the instant case shows that the marijuana was found in a cornfield more than one quarter mile from defendant's house, near a power line right-of-way. We find ample evidence to support the court's finding and conclusion that defendant had no reasonable expectation of privacy in this field and therefore agree with the court's determination that the protections of

the Fourth Amendment were not applicable to the area. Accordingly, we find no error in the court's ruling on this point.

[2] Defendant next argues that the court erred in denying his motion to suppress "the fruits of a warrantless search of the defendant's residence." Defendant acknowledges that he signed a "consent to search" form, agreeing to a search of his house by police officers, but contends that this consent was not voluntarily given.

Examination of the evidence adduced at the suppression hearing reveals some conflict in testimony regarding the circumstances surrounding defendant's consent to the search of his home. Defendant testified that he consented only after one of the officers threatened to "make it tough on" the defendant if he refused to sign the consent form. This officer and other officers present at the scene contradicted defendant's testimony, stating that no such statements were made. "When the trial judge's findings of fact are supported by competent evidence they will not be disturbed on appeal, even though the evidence is conflicting." *State v. Prevette*, 43 N.C. App. 450, 452, 259 S.E. 2d 595, 598 (1979). Because there was competent evidence supporting the court's conclusion that "the defendant freely and voluntarily consented to the search of the home," we find no error in the court's denial of defendant's motion to suppress the marijuana uncovered as a result of the search.

[3] Defendant next assigns error to the court's refusal to dismiss the charges against him at the close of the State's evidence "where the State failed to establish the total weight of the alleged marijuana." Defendant contends that the State's own evidence showed that the marijuana loaded onto trucks and weighed was accompanied by roots and dirt, that the material was wet, and that mature stalks, which are to be excluded from the total weight under N.C. Gen. Stat. Sec. 90-87(16), were included in the material loaded and weighed. Although the total weight of the material came to 16,620 pounds, well in excess of the 10,000 pound statutory threshold, and despite the fact that the State terminated the weighing process before weighing one truckload of the material, defendant contends that the evidence was insufficient as a matter of law to establish the essential element of weight of 10,000 pounds or more. He further contends

that subsequent destruction of the bulk of the material con-
stituted a denial of his due process rights. A similar claim was
discussed by this Court in *State v. Anderson,* 57 N.C. App. 602,
292 S.E. 2d 163, *disc. rev. denied,* 306 N.C. 559, 294 S.E. 2d 372
(1982):

> Whether the destruction [of physical evidence] infringes upon
> the rights of an accused depends upon the circumstances in
> each case. In this case we consider particularly significant
> the destruction of the bulk of the marijuana in good faith and
> for a practical reason, the preservation of random samples,
> the photographs of the physical evidence, and the failure on
> the part of the defendants to show that the weight of the
> marijuana, though a necessary element, was a critical issue.

*Id.* at 610-11, 292 S.E. 2d at 168. The *Anderson* court also noted
that "[t]he weight element upon a charge of trafficking in mari-
juana becomes more critical if the State's evidence of the weight
approaches the minimum weight charged." *Id.* at 608, 292 S.E. 2d
at 167.

In the instant case, the evidence reveals that officials
harvested eight truckloads of the material alleged to be mari-
juana and "plowed under" another "pickup load or so." The eight
loads weighed by officials of the License, Theft, and Weight Sec-
tion of the North Carolina Division of Motor Vehicles were found
to weigh 16,620 pounds. One load contained plants that had been
pulled up by the roots, while the remaining loads contained plants
that had been mown or handpicked. Some of the plants were
damp because of rain that interrupted the harvesting process.
Photographs and random samples were taken of the material
seized prior to its destruction. The State's evidence shows that
the destruction was performed in good faith and for a practical
reason. Our examination of this evidence persuades us that the
State introduced sufficient evidence on the essential element of
weight to permit the case to go to the jury, and we hold that the
court did not err in denying defendant's motion to dismiss the
charges against him. Furthermore, we think it clear that destruc-
tion of the seized marijuana did not deny defendant's right to due
process under the circumstances of this case.

[4] Defendant also contends that the court erred in admitting
testimony by a police officer that marijuana he observed in an

upstairs room of defendant's residence weighed "approximately 200 pounds." The officer testified that marijuana leaves were spread "just about all over the room" "3 to 4 inches deep" in a room "about 9 by 10." Defendant argues that the opinion testimony of this officer was inadmissible because he had not been qualified as an expert witness.

"The weight of objects is a matter on which opinion testimony of a non-expert witness is frequently admitted, provided the witness has those qualifications which show him to be capable of forming opinions upon the issue of weight that are reliable and trustworthy." 31 Am. Jur. 2d, *Expert and Opinion Evidence*, Sec. 159 (1967). "It is generally held that evidence as to size, weight, quantity and value from experienced witnesses who base their opinions upon personal observation is admissible." *State v. Weinstein*, 224 N.C. 645, 650, 31 S.E. 2d 920, 924 (1944). The testimony of the officer in the instant case was based on personal observation. Defendant had ample opportunity to challenge the witness's testimony on cross-examination, and he was free to argue the question of its proper weight to the jury. We believe the testimony was properly admitted under these circumstances. We note that even if its admission were erroneous, the abundant evidence of weight which was properly admitted would render any error harmless.

Defendant's next assignment of error asserts that "the trial court committed reversible error at the suppression hearing in allowing evidence as to whether the defendant grew marijuana in that evidence of innocence or guilt of the defendant should not have been considered during the suppression hearing." The exceptions forming the basis of this assignment of error refer to questions put to defendant by the State about what crops he grew on the land he leased, whether he grew marijuana on the land, and the length of his residence in the leased house. In his answer defendant denied growing marijuana on the land. Defendant does not assert that his answers to these questions were improperly admitted against him at trial, nor does he identify any way in which he was prejudiced by the questions. He merely contends that "[e]vidence of guilt . . . could cause a Trial Judge to fail to protect the constitutional rights of the accused." We first note that defendant's denial that he grew marijuana on the land can hardly be considered "evidence of guilt." We second note our

State v. Simmons

earlier holding that the court's denial of defendant's motion to suppress finds ample support in the record. This assignment of error borders on the frivolous.

[5] Defendant next assigns error to the court's denial of his motion to strike testimony by an expert witness. The record reveals that the witness was properly qualified as an expert in the identification of controlled substances. The witness was permitted to testify over objection that marijuana stalks he examined were not, in his opinion, mature. When the witness stated on cross-examination that his expertise did not extend to "the growing of marijuana" the defendant moved to strike "any evidence that the State has offered concerning maturity of the plants." Because the State had offered substantial evidence on this point, the motion to strike was clearly overbroad, and the court's action proper. Furthermore, we do not think admission of this testimony, if error, was prejudicial. The evidence relating to maturity of the plants was relevant only because mature stalks are not to be included in calculating the weight of the contraband. As we have already noted, we believe there was ample evidence from which the jury could infer that defendant possessed and manufactured more than 10,000 pounds of marijuana. This assignment of error is without merit.

We have examined the remaining assignments of error brought forward and argued by defendant and conclude that they do not require discussion. We hold that defendant had a fair trial, free from prejudicial error.

No error.

Judge BRASWELL concurs.

Judge EAGLES dissents.

Judge EAGLES dissenting.

I respectfully dissent and would vote to reverse based on the failure of the State's evidence to establish that the weight of the marijuana excluding mature stalks, roots and the muddy clods of dirt clinging to the roots amounted to more than 10,000 pounds as alleged. As noted in *State v. Anderson*, 57 N.C. App. 602, 608, 292

S.E. 2d 163, 167 (1982), "weight is one of the essential elements of the crimes charged." In *Anderson* the weight of the marijuana alleged was "in excess of 2000 pounds" and the evidence showed 2700 pounds including some arguably mature stalks which should have been excluded. The court there considered that the potential for error by including some arguably mature stalks was less significant where the weight differential was not close. Too, the court in *Anderson* noted that there was no evidence as to the maturity of the stalks and that "the burden was upon the defendant to show that the stalks were mature or that any other part of the matter or material seized did not qualify as 'marijuana' as defined by G.S. 90-87(16)."

In the case *sub judice* as distinguished from the facts in *Anderson*, there was evidence that there were mature stalks included, that entire plants were pulled up and loaded into trucks including mature plants with mature stalks, roots and dirt clinging to the pulled up roots. In addition, there is evidence that the material loaded on the trucks including roots, dirt, stalks and plants had been rained on and that they were wet when weighed.

This case is distinguishable from *Anderson* in that defendants here did offer credible, largely undisputed evidence as to the diversity of foreign (non-marijuana) materials (dirt, mud, wet stalks, etc.) included in the truckloads weighed and that the material weighed was wet, a factor which would have enhanced the weight.

I do not suggest that marijuana must be processed by law enforcement authorities before being destroyed in order for large volume drug trafficking charges to be sustained. However, I do suggest that fundamental fairness requires, at the least, that where entire plants are uprooted, an effort be made to exclude from the gross weight the roots and dirt or mud attached thereto and that some evidence be presented by the State as to approximately what portion of the material weighed is excludable as mature stalks or otherwise. The burden of proof as to all elements of a crime is properly on the State. The weight charged here is an essential element of the offense. Because the State failed to prove that there were 10,000 pounds of marijuana *excluding extraneous material*, I would reverse the conviction of trafficking in marijuana by manufacturing in excess of 10,000 pounds.