STATE OF NORTH CAROLINA, PLAINTIFF V. BRIAN FRANK GONZALES, DEFENDANT

No. COA03-606

(Filed 1 June 2004)

**Drugs— trafficking in marijuana—motion to dismiss—sufficiency of evidence—weight**

A de novo review revealed that the trial court erred by granting defendant's motion to dismiss the two trafficking in marijuana charges based on alleged insufficient evidence that the amount seized was above the statutory threshold of ten pounds provided in N.C.G.S. § 90-95(h)(1)(a), because: (1) the correct weight is that at seizure, thus containing its natural moisture; (2) the "usable or suitable for consumption" standard is not within North Carolina's statutory definition of marijuana; and (3) defendant is free to argue at trial that the 6.9-pound weight taken of the marijuana at the State Bureau of Investigation is evidence that there was excess water or other extraneous debris in the first recorded weight of 25.5 pounds for the freshly cut marijuana.

Appeal by the State from grant of a motion to dismiss entered 2 January 2003 by Judge Ernest B. Fullwood in New Hanover County Superior Court. Heard in the Court of Appeals 25 February 2004.

STATE v. GONZALES

[164 N.C. App. 512 (2004)]

*Attorney General Roy Cooper, by Assistant Attorney General William B. Crumpler, for the State.*

*Crossley, McIntosh, Prior & Collier, by Samuel H. MacRae, for defendant appellee.*

McCULLOUGH, Judge.

On 3 April 2002, Detectives with the New Hanover County Sheriff's Department, Vice and Narcotics Unit, located and seized 731 potted marijuana plants growing in the county. The plants were discovered on property located in Castle Hayne in two storage containers approximately 60 feet in length. Detectives had a search warrant for the property pursuant to unrelated probable cause. During the search of the property owner's residence, the detectives discovered the marijuana plants. The property owner told the detectives that the plants were defendant's.

The growing operation discovered by the Vice Narcotics Unit included lights with a timing system, fans, and an irrigation system. Officers cut the plants at the point where they joined the soil and bagged them.

On 4 April 2002, the plants were weighed at a Wilmington business that sold weight scales. The documented weight of the freshly cut marijuana was 25.5 pounds on that day. Following this weighing, the plants were boxed and sent to the State Bureau of Investigation (SBI) for further analysis. On the day the plants were submitted to the SBI, 19 April 2002, they were characterized as "wet" green plant material. On or about 7 May 2002, the plants were weighed at SBI and recorded as weighing 6.9 pounds.

On 5 April 2002, defendant was arrested for violations of the Controlled Substances Act. On 13 May 2002, defendant was indicted by a grand jury for two counts of trafficking in marijuana: one count based on possessing the substance; and one count based on manufacturing the substance. Pursuant to N.C. Gen. Stat. § 90-95(h)(1)(a) (2003), the amount alleged was in excess of 10 pounds, but less than 50 pounds.

Defendant filed a pretrial motion to dismiss the indictments charging the trafficking offenses. The hearing was held on 16 December 2002, and on 2 January 2003 the trial court issued an order dismissing the two trafficking charges. The trial court found as a matter of law "[t]hat the legal weight of marijuana is that weight at which

it is usable or suitable for consumption." Pursuant to this conclusion of law, the court found as a matter of law that there was no evidence that the marijuana seized in this case was in excess of 10 pounds as required for a trafficking offense. The State appealed, raising the single issue that it was error by the trial court to dismiss the two charges of trafficking.

## Proving the Weight of Marijuana

Defendant contends that the trial court correctly granted the motion to dismiss the trafficking charges based on the court's conclusion of law (A) that the weight of marijuana includes only that marijuana which is "usable or suitable for consumption." The State assigned as error this conclusion of law. The State argues that the weight at the time of seizure, as a matter of law, is the critical weight when determining whether the quantity was sufficient for a trafficking charge. Pursuant to our analysis below, we hold that the trial court's interpretation of the definition of "marijuana" as applied to the trafficking statute was reversible error.

### I. Standard of Review

The trial court order made the following conclusion as a matter of law: "That the legal weight of marijuana is that weight at which it is usable or suitable for consumption." The trial court found, under this legal conclusion, that the State offered no evidence that the weight of the marijuana seized was over 10 pounds and therefore dismissed the trafficking charges. The trial court's conclusion was, in effect, a legal interpretation of N.C. Gen. Stat. § 90-87(16) (2003), which defines marijuana as used in the trafficking statute. We review such legal interpretations *de novo. See State v. Mitchell*, 217 N.C. 244, 7 S.E.2d 567 (1940).

### II. Proving the Weight of Marijuana in North Carolina

#### A. Marijuana Defined

Defendant was indicted under N.C. Gen. Stat. § 90-95(h)(1)(a) for "trafficking of marijuana" at a quantity in excess of 10 pounds, but less than 50 pounds. For the purposes of this charge, marijuana is defined as:

> (16) "Marijuana" means all parts of the plant of the genus Cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or prepara-

tion of such plant, its seeds or resin, but shall not include the mature stalks of such plant, fiber produced from such stalks, oil, or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

N.C. Gen. Stat. § 90-87(16) (2003). Those parts of the plant not included in the statutory definition of marijuana, such as the mature stalks and sterilized seeds, are necessarily not to be included in the weight of the marijuana when determining a trafficking charge. These exclusions from the definition are not "marijuana." This definition tracks almost verbatim that of the federal statutory definition of marijuana. *See* 21 U.S.C. § 802(16) (2003).

Proving the weight of the marijuana is an element of the trafficking offense. The State has the burden of proving at trial beyond a reasonable doubt that defendant committed the offenses by possessing and manufacturing more than 10 pounds of the substance. *State v. Diaz*, 88 N.C. App. 699, 701-02, 365 S.E.2d 7, 9, *cert. denied*, 322 N.C. 327, 368 S.E.2d 870 (1988). For this issue to survive a motion to dismiss on a trafficking charge, the State must come forth with substantial evidence, viewed in a favorable light, that the weight of the marijuana meets the 10-pound threshold. *State v. Mitchell*, 336 N.C. 22, 26-27, 442 S.E.2d 24, 27 (1994). In reviewing a motion to dismiss, the trial court should not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility. *State v. Parker*, 354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). The weight element becomes more critical as the State's evidence of weight approaches the minimum weight charged. *State v. Anderson*, 57 N.C. App. 602, 608, 292 S.E.2d 163, 167, *cert. denied*, 306 N.C. 559, 294 S.E.2d 372 (1982).

### B. Presumption All Parts of the Plant are "Marijuana"

This Court has required an affirmative showing by the defendant that the weight of marijuana, for purposes of meeting the weight element of a trafficking charge, improperly included one of the exclusions from the definition. In *Anderson*, we held that the burden is on the defendant to show that stalks were mature or that any other part of the matter or material seized did not qualify as "marijuana." *Id.* The Court in *Anderson* based their analysis on that of *State v. Childers*, 41 N.C. App. 729, 255 S.E.2d 654, *cert. denied*, 298 N.C. 302, 259 S.E.2d

916 (1979), where this Court held that if the defendant does not make any showing as to the fertility of marijuana seeds, and offers no proof that they were in any different state from that in which they naturally occurred, the State is entitled to assume that the seeds are not sterilized and to proceed upon that assumption until the contrary is shown. *Id.* at 734, 255 S.E.2d at 657-58, *cert. denied*, 298 N.C. 302, 259 S.E.2d 916 (1979). Therefore, it is the defendant's burden to show that any part of the seized matter is not "marijuana" as defined. In such a case where the defendant does come forth with evidence that the State's offered weight of the marijuana includes substances not within the definition (e.g., mature stems or sterile seeds), it then becomes the jury's duty to accurately "weigh" the evidence.

### C. *Moisture Naturally Contained within Marijuana*

Both the State and defendant offer competing contentions, each as a matter of law, as to whether moisture contained in marijuana is within the definition of marijuana such that it should be considered part of the drug's weight under N.C. Gen. Stat. § 90-95. This issue can also be framed as follows: What is the proper time to weigh marijuana, at seizure (still containing moisture), or when it is usable or suitable for consumption (after it has completely dried)? The State contends that moisture in the marijuana is a part of the definition and therefore the determining weight is at seizure; defendant contends that only marijuana that is usable or suitable for consumption is marijuana, that being the dried weight. We find no authority in North Carolina exactly on point for either of these contentions. However, there is North Carolina case law that impliedly accepts the State's contention that the correct weight is that at seizure and therefore containing its natural moisture. There is federal guidance on point as well.

### 1. *Usable or Suitable for Consumption*

The defendant argues, as the trial court found in this case, that the determinative weight of marijuana for purposes of the trafficking statute is when the marijuana is usable or suitable for consumption. We disagree.

Defendant cites *United States v. Lipp*, 54 F. Supp. 2d 1025 (D. Kan. 1999), *aff'd*, 215 F.3d 1338 (2000), as guidance for their interpretation of "marijuana" as read in the North Carolina statutes. The *Lipp* case, also dealing with moist marijuana and its weight for the purpose of federal sentencing, interpreted 1993 and 1995 amend-

ments to the Federal Sentencing Guidelines (FSG). These amendments came in response to district courts that were issuing sentences for trafficking based on a weight of marijuana that included its natural water content. *See United States v. Pinedo-Montoya*, 966 F.2d 591 (10th Cir. 1992) (holding that the district court properly considered the moisture content in the calculation of the weight of the marijuana for sentencing purposes); *United States v. Garcia*, 925 F.2d 170 (7th Cir. 1991) (holding that, because marijuana was not otherwise specified, the entire weight, including any existing moisture content, is relevant for sentencing purposes).

Effective 1 November 1993, Amendment 484 changed Application Note 1 of the FSG to include the following language:

Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be *used*. Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance. If such material cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted.

U.S. Sentencing Guidelines Manual § 2D1.1, cmt., n.1 (2004) (emphasis added). An additional amendment was added in 1995, Amendment 518, providing the following:

Similarly, in the case of marihuana having a moisture content that renders the marihuana *unsuitable for consumption* without drying (this might occur, for example, with a bale of rain-soaked marihuana or freshly harvested marihuana that had not been dried), an approximation of the weight of the marihuana without such excess moisture content is to be used.

*Id.* (emphasis added). The Commentary to Amendment 518 is as follows:

[T]his amendment clarifies the treatment of marihuana that has a moisture content sufficient to render it unusable without drying (e.g., a bale of marihuana left in the rain or recently harvested marihuana that has not had time to dry). In such cases, using the weight of the wet marihuana can increase the offense level for a factor that bears no relationship to the scale of the offense or the

marketable form of the marihuana. Prior to the effective date of the 1993 amendments, two circuits had approved weighing wet marihuana despite the fact that the marihuana was not in a usable form. *United States v. Pinedo-Montoya,* 966 F.2d 591 (10th Cir. 1992); *United States v. Garcia,* 925 F.2d 170 (7th Cir. 1991). Although Application Note 1 in the Commentary to § 2D1.1, effective November 1, 1993 (pertaining to unusable parts of a mixture or substance) should produce the appropriate result because marihuana must be dried before being used, this type of case is sufficiently distinct to warrant a specific reference in this application note to ensure correct application of the guideline.

18 USCS Appx. C, § 518 (2004).

Defendant correctly interprets these amendments as a clear and intended shift from the *Garcia* and *Pinedo-Montoya* holdings, and that the weight of marijuana for federal sentencing purposes must be that when it is in its usable form, meaning suitable for consumption and dried. Defendant argues that the lower court's dismissal of the trafficking charge in this case, using the FSG for its interpretation of "marijuana" to exclude moisture content as a matter of law, should be affirmed. Defendant argues that these amendments to the FSG provide the only guidance for North Carolina courts in determining the effect of moisture content in marijuana for the purposes of the weight element of the North Carolina trafficking statute. Furthermore, they provide the jury a standard as to the correct weight to consider.

We do not find the "usable or suitable for consumption" standard to be within North Carolina's statutory definition of marijuana. In federal court, the question of whether the weight of the controlled substance seized is an element of the offense that must be found beyond a reasonable doubt or a factor in sentencing that must be found by a preponderance of the evidence, is one that has been in great dispute since the Supreme Court rendered its decision in *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435 (2000) (holding that factors increasing a defendant's sentence beyond the statutory maximum of the crime charged, with the exception of prior convictions, must be proven beyond a reasonable doubt). The divided circuits on this issue, and the multitude of district court analyses on this issue, make the FSG less persuasive. *See* 21 U.S.C. 841 (the federal trafficking statute); *see also United States v. McAllister,* 272 F.3d 228, 232-33 (4th Cir. 2001) (finding § 841 still constitutional); *United States v. Buckland,* 259 F.3d 1157, 1163-68 (9th Cir. 2001), *reh'g en banc granted,* 265 F.3d 1085 (2001) (holding § 841 facially unconstitu-

tional). Amendments 484 and 518 to the FSG came before *Apprendi*, and those amendments were drafted with the understanding that a judge could constitutionally approximate the quantity of the seized substance by a preponderance of the evidence for sentencing purposes. *Apprendi* has sufficiently changed the sentencing landscape on this issue, and we believe the FSG amendments offer little in the way of guidance.

In North Carolina, establishing the weight element of a trafficking charge is a question the jury must determine beyond a reasonable doubt. This requires a clear standard be given to the jury in making this determination. While "usable and suitable for consumption" is one such standard, such a point falls within a spectrum of times and thus weights. We therefore interpret our definition of "marijuana" to mean marijuana at the point of seizure. *See State v. Lemonds*, 160 N.C. App. 172, 175, 584 S.E.2d 841, 842-43 (2003) (where there were three substantially different weights taken, but all above 10 pounds). Accordingly, we hold that the trial court improperly read into the definition of marijuana "usable or otherwise suitable for consumption," and thus improperly disregarded the 25.5-pound weight offered by the State on the weight element.

### B. The Weight at the Point of Seizure

Determining the weight of the marijuana at the point of seizure has been accepted *sub silentio* by this Court in trafficking cases. In *Anderson*, 57 N.C. App. at 607, 292 S.E.2d at 166, North Carolina authorities harvested two truckloads of material alleged to be marijuana. The evidence of weight was 2,700 pounds, or approximately 35% above the statutory threshold of 2,000 pounds. *Id.* The State's evidence on the weight of each of these truckloads was established on the day of seizure. *Id.* In *State v. Simmons*, 66 N.C. App. 402, 407, 311 S.E.2d 357, 360 (1984), eight truckloads of marijuana were weighed at the time of seizure. One of these loads contained plants that had been pulled up by the roots, while the remaining loads contained loads that had been mown or handpicked. *Id.* Some of the plants were damp because of rain that had interrupted the harvesting process. *Id.* The loads were weighed by officials of the License, Theft, and Weight Section of the North Carolina Division of Motor Vehicles and were found to weigh 16,620 pounds. *Id.* The State's evidence of weight was 16,620 pounds, or 66% above the statutory threshold of 10,000 pounds. *Id.* at 406, 311 S.E.2d at 359. In *State v. Grainger*, 78 N.C. App. 123, 126, 337 S.E.2d 77, 79-80 (1985), *cert. denied*, 316 N.C. 198, 341 S.E.2d 572 (1986), the weight of three truckloads of marijuana

were taken at the time of seizure yielding approximately 4,800 pounds, or approximately 141% above the statutory threshold of 2,000 pounds. In *Anderson*, *Simmons*, and *Grainger*, the weight of the marijuana taken *at the point of seizure* was found sufficient to survive a motion to dismiss without any concern over moisture content of the freshly harvested plants, and without concern over the usability and consumable state of the plants.

In this case, at the point of seizure, the marijuana plants weighed 25.5 pounds, or approximately 155% above the statutory threshold of 10 pounds. In light of our prior decisions, we hold this to be clear and substantial evidence that defendant possessed over 10 pounds of marijuana as defined in the statute.

*Anderson's*, *Simmons's*, and *Grainger's* presumed acceptance of weighing the marijuana at the point of seizure comports with the definition of marijuana. The first portion of the North Carolina definition of marijuana states, "all parts of the plant of the genus Cannabis, *whether growing or not*." N.C. Gen. Stat. § 90-87(16) (emphasis added.) The definition then goes on to list a number of ways "all parts" of the plant may be used illegally, expanding the definition greatly (e.g., "derivative, mixture"). *Id.* After this expansive portion of the definition, the definition then lists those things excluded from the definition (e.g., mature stalks and sterilized seeds). *Id.* The moisture of the plant is not listed as an exclusion from the definition, though any moisture within a mature stalk would impliedly fall out of the definition. As to proving an exclusion from the definition, North Carolina case law is clear that this is defendant's burden. *See Anderson*, 57 N.C. App. at 608, 292 S.E.2d at 167; and *Childers*, 41 N.C. App. at 734, 255 S.E.2d at 657-58.

Though the North Carolina definition of marijuana tracks that of the federal statutory definition, the amendments to the FSG do not affect our interpretation of marijuana as defined in North Carolina. N.C. Gen. Stat. § 90-81 was last amended in 2003, approximately ten years after FSG Amendment 484, and approximately eight years after FSG Amendment 518. The North Carolina legislature has had ample time to make the requisite changes to the statutory definition of marijuana to track these FSG amendments and specifically exclude the plant's natural moisture content from the definition of "marijuana," but has thus far chosen not to do so.

Because our legislature has chosen to maintain the federal definition of "marijuana," without incorporating any of the FSG modifica-

tions to the North Carolina definition, we find the pre-amendment cases of *Garcia* and *Pinedo-Montoya* as guideposts for our interpretation of the North Carolina definition. *Garcia* found that:

> There can be little doubt that water may constitute an integral part of a "mixture or substance" containing a detectable amount of marijuana. Indeed, water is a natural component of the growing marijuana plant and is arguably included in the statutory definition of the drug itself. Section 802(16) defines marijuana as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin," but specifically excludes only mature stalks of the marijuana plant and their derivative products from the definition. 21 U.S.C. § 802(16).

*Garcia*, 925 F.2d at 172. The *Pinedo-Montoya* court interpreted *Garcia* as follows:

> Additionally, the court believed water is arguably included within the statutory definition of marijuana. 21 U.S.C. § 802(16). While the court acknowledged that the moisture content of the marijuana may affect its marketability, the court noted its interpretation had the result of minimizing judicial concerns about when the marijuana was harvested and how it was dried, processed and stored.

*Pinedo-Montoya*, 966 F.2d at 595. Both *Pinedo-Montoya* and *Garcia* interpret the federal definition of marijuana to arguably include the moisture content of the plant.

The North Carolina case law of *Anderson, Simmons*, and *Grainger*, impliedly accept that the determinative weight of marijuana is at seizure. Furthermore, the definition requires that all parts of the plant, growing or not, meet the definition of marijuana for purposes of its weight. For a defendant to challenge the State's evidence of the weight of marijuana at the time of seizure, we require an affirmative showing of a specific exclusion to the definition: mature stalks (*Anderson*), sterile seeds (*Childers*), or some other extraneous material that was included in the weighing (*e.g.*, excess water). This then should go to the jury to "balance."

### III. Conclusion

Pursuant to the analysis above, we believe there was sufficient evidence for the State to survive the motion to dismiss on the traf-

ficking charges. The evidence of the 25.5-pound weight of the marijuana, taken and recorded the day after it had been seized, is substantial evidence that the weight of the marijuana exceeds the 10-pound threshold for a conviction under N.C. Gen. Stat. § 90-95(h)(1)(a). *Mitchell*, 336 N.C. at 26-27, 442 S.E.2d at 27. This weight correctly included weight of the moisture naturally within the plant. At trial, the defendant is free to challenge, among other facets of the State's case, the method the marijuana was weighed, the scales used, and whether all of the substance weighed was marijuana as defined in N.C. Gen. Stat. § 90-87(16). Furthermore, defendant could offer as evidence the 6.9-pound weight taken of the marijuana at the SBI as evidence that there was excess water or other extraneous debris in the first recorded weight because the disparity between the two figures is beyond that of typical dehydration.[1] Ultimately, these are issues of fact for a jury to decide.

We have reviewed all other assignments of error and find them moot in light of the issues addressed herein. Therefore, the granting of a motion to dismiss by the trial court on the two trafficking charges is

Reversed.

Judges HUNTER and LEVINSON concur.

---

1. This is a hypothetical argument, and we hold no opinion as to its validity in the present case.