STATE OF NORTH CAROLINA v. JOHN JOSEPH MANNING

No. COA06-1314

(Filed 19 June 2007)

**1. Drugs— weight of marijuana—foundation for scales**

The trial court did not abuse its discretion in a trafficking in marijuana, possession with intent to sell or distribute marijuana, maintaining a dwelling for the purpose of keeping controlled substances, and double possession of drug paraphernalia case by admitting evidence of the weight of the marijuana allegedly without adequate foundation that the instrument used to weigh the marijuana was properly assembled, calibrated, and tested, be-

STATE v. MANNING

[184 N.C. App. 130 (2007)]

cause: (1) the State's evidence tended to show that ordinary scales, common procedures, and reasonable steps to ensure accuracy were utilized when the marijuana was weighed; (2) the testimony of two witnesses established an adequate foundation that the scale used to weigh the marijuana was properly functioning; and (3) the weight element upon a charge of trafficking in marijuana becomes more critical if the State's evidence of the weight approaches the minimum weight charged, and the weight recorded at Toledo Scales was 25.5 pounds which exceeded the minimum weight charged by 15.5 pounds.

2. **Drugs— trafficking in marijuana—motion to dismiss—sufficiency of evidence—weight of marijuana**

The trial court did not err by failing to dismiss the charge of trafficking in marijuana based on alleged insufficient evidence of the weight of the marijuana, because: (1) although defendant was allowed to present evidence that the State's offered weight of marijuana included substances not within the definition such as mature stalk, it then becomes the jury's duty to accurately weigh the evidence; and (2) the State presented sufficient evidence tending to show the weight of the marijuana exceeded the minimum ten pounds.

Appeal by defendant from judgment entered 2 March 2006 by Judge John E. Nobles, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 4 June 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Harriet F. Worley, for the State.*

*Stubbs, Cole, Breedlove, Prentis & Biggs, PLLC, by C. Scott Holmes, for defendant-appellant.*

TYSON, Judge.

John Joseph Manning ("defendant") appeals from judgment entered after a jury found him to be guilty of trafficking in marijuana pursuant to N.C. Gen. Stat. § 90-95(H)(1), possession with intent to sell or distribute marijuana pursuant to N.C. Gen. Stat. § 90-95(A), maintaining a dwelling for the purpose of keeping controlled substances pursuant to N.C. Gen. Stat. § 90-108(A)(7), and two counts of possession of drug paraphernalia pursuant to N.C. Gen. Stat. § 90-113.22. We find no error.

## I. Background

Around April 2001, Brian Gonzales ("Gonzales") approached defendant and offered to pay him $1,000.00 per month to use defendant's property to grow marijuana. Defendant agreed. Gonzales acquired two metal shipping containers and placed them on defendant's property. One of the metal shipping containers measured approximately forty feet long, and the other was approximately twenty feet long. Both containers extended eight feet high.

Over a period of time covering three to five months, Gonzales, with defendant's assistance, constructed marijuana growing facilities inside the containers. Gonzales testified defendant assisted in the construction and operation of the growing facilities inside the containers by: (1) installing the electrical lines for lighting; (2) installing water pumps; (3) diverting water from a well on defendant's property to water the marijuana plants; (4) planting seeds; (5) picking out strains of marijuana that were sufficient for the operation; (6) growing seeds; and (7) harvesting the plants to sell.

On 3 April 2002, officers with the New Hanover County Sheriff's Office obtained a search warrant and searched defendant's residence and shipping containers. The officers cut locks off the container doors to gain access. Inside the containers, the officers discovered 731 marijuana plants in various stages of growth, lights, a sprinkler system, fertilizer, soil, and growth charts for the marijuana.

The officers called narcotics officers to the scene to collect and preserve the evidence found inside the containers. The narcotics officers collected the plants by cutting each plant above the root ball and placing them inside two thirty-gallon black plastic bags. The officers took the bags to the vice and narcotics office where they transferred the plants into more breathable brown paper bags.

On the following morning, 4 April 2002, Lieutenant Barney Lacock ("Lieutenant Lacock") transported the brown paper bags containing the marijuana to Toledo Scales to determine the marijuana's green weight—the plant material's weight at the time it is harvested. James Martin ("Martin"), service manager at Toledo Scales, weighed the bags. The total green weight of the bags and their contents was 25.5 pounds.

During cross-examination Martin testified: (1) he did not possess personal knowledge about whether the scales were properly assembled; (2) the scale used to weigh the marijuana was newly assembled;

STATE v. MANNING

[184 N.C. App. 130 (2007)]

(3) if the scale was not properly assembled, it would not balance at zero; (4) if the scale balances at zero, it is correctly calibrated; (5) when he weighed the marijuana, the scales balanced at zero; (6) he had checked approximately 100 scales, and of those scales, only one was incorrectly calibrated, and it was manufactured by a different company than the scale in question; (7) the particular scale in question was sold sometime after the day it was used to weigh the marijuana; and (8) since that date, he had not received any service calls on that particular scale. Lieutenant Lacock testified that he observed Martin zero the scale.

After being weighed, the bags containing marijuana were transferred into three boxes and stored inside a drug vault at the New Hanover County Sheriff's Office. Some of the plant material decomposed while being stored. On 19 April 2002, the evidence was sent to the SBI laboratory, where it was analyzed and weighed again. On 7 May 2002, an SBI chemist recorded the marijuana's dry weight to be 6.9 pounds.

On 25 August 2005, the marijuana was examined by Charles Williams ("Williams"), an expert for the defense in the fields of agronomy and horticulture. Williams agreed with the State that the only way to determine the true weight of the plant material, including stalks, roots, leaves, and flowers was to determine its green weight. Williams testified: (1) the plant material was significantly decomposed at the time he examined it; (2) approximately thirty to forty percent of the plant material was mature stalks; (3) approximately ten percent of the plant material had reached sufficient maturity to produce a flower or bud at the time law enforcement officers harvested the plants; (4) the stalks of a plant can be considered mature even if a plant is not ready to be harvested; (5) it did not appear that the mature stalks were separated from any of the other parts of the plants; and (6) the green weight of the marijuana plants, excluding the mature stalks, at the time of the seizure was 5.1 to 10.2 pounds. Defendant did not testify.

Defendant was tried before a jury on 27 February 2006. At the close of the State's evidence, the trial court granted defendant's motion to dismiss the charges of trafficking and conspiracy to traffic more than ten pounds by manufacturing.

The jury found the defendant to be guilty of: (1) trafficking in marijuana pursuant to N.C. Gen. Stat. § 90-95(H)(1); (2) possession with intent to sell and distribute marijuana pursuant to N.C. Gen.

Stat. § 90-95(A); (3) two counts of possession of drug paraphernalia pursuant to N.C. Gen. Stat. § 90-113.22; and (4) maintaining a dwelling for the purpose of keeping a controlled substance pursuant to N.C. Gen. Stat. § 90-108(A)(7). Defendant was sentenced to a minimum of twenty-five and a maximum of thirty months imprisonment. Defendant appeals.

## II. Issues

Defendant argues the trial court erred in: (1) admitting evidence of the weight of the marijuana without adequate foundation that the instrument used to weigh the marijuana was properly assembled, calibrated, and tested and (2) failing to dismiss the charge of trafficking in marijuana because the State tendered insufficient evidence of the weight of the marijuana.

## III. Weight of the Marijuana

### A. Standard of Review

"The standard of review for this Court assessing evidentiary rulings is abuse of discretion. *State v. Boston*, 165 N.C. App. 214, 218, 598 S.E.2d 163, 166 (2004). A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision. *State v. Hayes*, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985) (citing *State v. Wilson*, 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985))."

*State v. Hagans*, 177 N.C. App. 17, 23, 628 S.E.2d 776, 781 (2006).

### B. Analysis

[1] Defendant argues that the trial court erred in admitting evidence of the weight of the marijuana without an adequate foundation that the scale used to weigh the marijuana was properly functioning, maintained, and calibrated. We disagree.

Defendant contends the testimony showed: (1) the scales used to weigh the marijuana were assembled recently; (2) the person who weighed the plants had no knowledge of whether the scales were assembled or calibrated properly; and (3) no tests were performed on the scale to determine whether it was accurate.

In *State v. Diaz*, this Court considered a proper foundation for evidence of weight of marijuana. 88 N.C. App. 699, 365 S.E.2d 7, *cert. denied*, 322 N.C. 327, 368 S.E.2d 870 (1988). In *Diaz*, the defendant

claimed the trial court erred in admitting evidence of the weight of the marijuana because the State failed to establish a proper foundation for that testimony. 88 N.C. App. at 701-02, 365 S.E.2d at 9. The defendant asserted the State failed to show that the person who weighed the marijuana was qualified and failed to demonstrate the scales were in working order on the day of the weighing. *Id.* at 701, 365 S.E.2d at 9. We stated, "Unlike tests that are prescribed by statute such as the breathalyzer test, the criminal statutes do not provide specific procedures for obtaining weights of contraband. Thus ordinary scales, common procedures, and reasonable steps to ensure accuracy must suffice." *Id.* at 702, 365 S.E.2d at 9.

In *Diaz*, Agent McLeod, the law enforcement agent present when the marijuana was weighed, described the procedure by which the weight was taken. 88 N.C. App. at 702, 365 S.E.2d at 9. Law enforcement officers transported three trucks to a fertilizer store where they were weighed full. *Id.* The marijuana was unloaded and the trucks were weighed empty. *Id.* The cargo weighed 43,450 pounds. *Id.* Agent McLeod stated that the scales were certified within seven months of the weighing. *Id.* Based upon Agent McLeod's testimony, this Court concluded that "the foundation was adequate for admission of the evidence of weight." *Id.*

Here, the State's evidence tended to show that "ordinary scales, common procedures, and reasonable steps to ensure accuracy" were utilized when the marijuana was weighed. *Id.* Martin and Lieutenant Lacock's testimony established an adequate foundation that the scale used to weigh the marijuana was properly functioning. Martin testified: (1) if the scale was not properly assembled, it would not balance at zero; (2) if the scale balances at zero, it is correctly balanced; (3) the scale balanced at zero on the day he weighed the marijuana; (4) he had seen 100 or more of the particular scale model in question; (5) he assembled approximately twenty-five scales of the same model; (6) once the scale is assembled, it was normal procedure to put weight on the scale to check calibration; (7) over a period of twenty years he had checked approximately 100 scales, and of those scales, only one was incorrectly calibrated, and it was manufactured by a different company than the scale in question; (8) the particular scale in question was sold sometime after the day it was used to weigh the marijuana; and (9) he had not received any services calls on that particular scale. Lieutenant Lacock testified that he took the marijuana to Toledo Scales to be weighed and observed Martin zero the scale.

Moreover, this Court noted in *Diaz* that " 'the weight element upon a charge of trafficking in marijuana becomes more critical if the State's evidence of the weight approaches the minimum weight charged.' " *Id.* (quoting *State v. Anderson,* 57 N.C. App. 602, 608, 292 S.E.2d 163, 167, *cert. denied,* 306 N.C. 559, 294 S.E.2d 372 (1982)). Here, the weight recorded at Toledo Scales was 25.5 pounds, which exceeds the minimum weight charged by 15.5 pounds.

In support of his contentions, defendant cites *State v. Mason,* 144 N.C. App. 20, 26-27, 550 S.E.2d 10, 15-16 (2001) (error to admit evidence of a videotape recording when "[n]one of the State's witnesses gave testimony to indicate that there was any routine maintenance or testing" of the security system in question) and *State v. Sibley,* 140 N.C. App. 584, 586, 537 S.E.2d 835, 837-38 (2000) (videotape inadmissible because not properly authenticated since State failed to call any witnesses to testify that the camera was functioning properly or that the tape accurately represented the events that were filmed).

Both *Mason* and *Sibley* involve authentication of videotape recordings, which have specific requirements in laying a proper foundation for their admission. *Mason* sets out four elements needed to lay a proper foundation before a videotape can be admitted. 144 N.C. App. at 25, 550 S.E.2d at 14. These elements are unique to videotapes and are different from those set out in *Diaz* for a proper foundation for the admission of evidence of weight.

*Diaz* only requires that the State present evidence of "ordinary scales, common procedures, and reasonable steps to ensure accuracy." 88 N.C. App. at 702, 365 S.E.2d at 9. The State presented sufficient evidence to establish a proper foundation through the testimony of Martin and Lieutenant Lacock to support the admission of the weight of the marijuana. The trial court did not err in admitting evidence of the marijuana's weight. This assignment of error is overruled.

## IV.  Motion to Dismiss

## A.  Standard of Review

The standard for ruling on a motion to dismiss is whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense. Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. In ruling on a motion to dismiss, the trial court must consider all of the evi-

dence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal.

*State v. Wood,* 174 N.C. App. 790, 795, 622 S.E.2d 120, 123 (2005) (internal quotations omitted). This Court stated in *State v. Hamilton,* "[i]n 'borderline' or close cases, our courts have consistently expressed a preference for submitting issues to the jury, both in reliance on the common sense and fairness of the twelve and to avoid unnecessary appeals." 77 N.C. App. 506, 512, 335 S.E.2d 506, 510 (internal citations omitted), *disc. rev. denied,* 315 N.C. 593, 341 S.E.2d 33 (1986).

### B.  Analysis

**[2]**  Defendant argues the State presented insufficient evidence of the marijuana's weight and that the trial court erred in denying his motion to dismiss the trafficking charge. We disagree.

Defendant claims the State included mature stalks in the weight of the marijuana, which are excluded from the statutory definition of marijuana. N.C. Gen. Stat. § 90-87(16) (2005). Defendant was indicted under N.C. Gen. Stat. § 90-95(h)(1), which provides:

> Any person who sells, manufactures, delivers, transports, or possesses in excess of 10 pounds (avoirdupois) of marijuana shall be guilty of a felony which felony shall be known as "trafficking in marijuana" and if the quantity of such substance involved is in excess of 10 pounds, but less than 50 pounds, such person shall be punished as a Class H felon and shall be sentenced to a minimum term of 25 months and a maximum term of thirty months in the State's prison and shall be fined not less than five thousand dollars ($5,000).

N.C. Gen. Stat. § 90-95(h)(1) (2005).

"Proving the weight of the marijuana is an essential element of the trafficking offense." *State v. Gonzales,* 164 N.C. App. 512, 515, 596 S.E.2d 297, 299 (2004), *aff'd,* 359 N.C. 420, 611 S.E.2d 832 (2005). To prove the element of weight, the State "must either offer evidence of its actual, measured weight or demonstrate that the quantity of marijuana itself is so large as to permit a reasonable inference that its

weight satisfied this element." *State v. Mitchell*, 336 N.C. 22, 28, 442 S.E.2d 24, 27 (1994). The statutory definition of marijuana reads:

> "Marijuana" . . . *shall not include the mature stalks of such plant*, fiber produced from such stalks, oil, or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks, . . . fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

N.C. Gen. Stat. § 90-87(16) (2005) (emphasis supplied).

In *State v. Gonzales*, this Court held, "[t]hose parts of the plant not included in the statutory definition of marijuana, *such as the mature stalks* and sterilized seeds, are necessarily not to be included in the weight of the marijuana when determining a trafficking charge." 164 N.C. App. 512, 515, 596 S.E.2d 297, 299 (2004) (emphasis supplied). Under the statute, "mature stalks and sterilized seeds" are not "marijuana." *Id.*

Defendant must make an affirmative showing that the weight of the marijuana improperly included materials excluded from the definition of marijuana. *Id.* In *Gonzales*, this Court concluded "it is the defendant's burden to show that any part of the seized matter is not 'marijuana' as defined." 164 N.C. App. at 516, 596 S.E.2d at 300. In *State v. Anderson*, this Court held "the burden is on the defendant to show that stalks were mature or that any other part of the matter or material seized did not qualify as 'marijuana.' " 57 N.C. App. 602, 608, 292 S.E.2d 163, 167, *cert. denied*, 306 N.C. 559, 294 S.E.2d 372 (1982).

Once defendant offers evidence tending to show the total weight may have included mature stalks, the burden does not shift to the State for further evidence, as defendant contends. The issue of the "weight" of the marijuana becomes one for the jury. We held in *Gonzales*, "where the defendant does come forth with evidence that the State's offered weight of the marijuana includes substances not within the definition (e.g., mature stems or sterile seeds), it then becomes the jury's duty to accurately 'weigh' the evidence." 164 N.C. App. at 516, 596 S.E.2d at 300. We concluded, "[i]n North Carolina, establishing the weight element of a trafficking charge is a question the jury must determine beyond a reasonable doubt." *Id.* at 519, 596 S.E.2d at 301.

The State met its burden on the issue of weight by presenting the testimony of Martin and Lieutenant Lacock that the marijuana's green

weight was 25.5 pounds. Martin testified that he calibrated the scale, weighed the marijuana, and recorded its weight at 25.5 pounds. Lieutenant Lacock testified that he observed Martin zero the scale and weigh the marijuana. The State also offered evidence that the 25.5 pounds was the marijuana's green weight. The marijuana was taken by Lieutenant Lacock and weighed the morning after it had been harvested. Defendant's own expert agreed that the only way to determine the true weight of marijuana was to determine its weight at the time it was harvested. The SBI Laboratory determined the marijuana's weight to be 6.9 pounds. This weight was taken a month after the marijuana had been harvested and only represented the marijuana's dry weight.

Defendant's expert witness, Williams, estimated between thirty to forty percent of the plant material appeared to be mature stalks and twenty to forty percent, or 5.1 to 10.2 pounds, of the original green weight was leaves and flowers. Using defendant's expert's estimate that forty percent of the plant material was mature stalk, the total weight of the remaining marijuana would be 15.3 pounds, more than the ten pound minimum required by the statute. Under *Gonzales*, defendant was allowed to present this evidence to rebut the State's evidence and this evidence only creates an issue of fact for the jury to determine the "weight." 164 N.C. App. at 516, 596 S.E.2d at 300.

The State presented sufficient evidence tending to show the weight of the marijuana exceeded ten pounds to overcome defendant's motion to dismiss the trafficking charge. This assignment of error is overruled.

## V.  Conclusion

The State established a proper foundation and presented sufficient evidence to introduce evidence that the weight of the marijuana seized from defendant exceeded the ten pound minimum as required by statute. Defendant received a fair trial, free from prejudicial errors he preserved, assigned and argued.

No Error.

Chief Judge MARTIN and Judge McCULLOUGH concurs.